UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
　　　　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　)　　　CRIMINAL NO. 05-10067-PBS
　　　　　　　　　　　　　　　　　　)
TALMUS R. TAYLOR　　　　　　　)
_____)


DEFENDANT'S SENTENCING MEMORANDUM


For the reasons stated below, defendant Talmus R. Taylor requests that the court impose a sentence substantially below the guideline imprisonment range of 30 to 37 months calculated by the probation officer based on a Total Offense Level of 19 and a Criminal History Category of I. Specifically, defendant requests that the court impose a sentence of probation, based on the nature of the offense, defendant's employment as an elementary school teacher, the totality of defendant's life, and considering the factors set forth in 18 U.S.C. § 3553(a).

For the past eighteen years, Talmus Taylor has been employed as a music teacher in the Boston Public School system. For the past eleven years he has taught elementary school students at the Emily A. Fifield School in Dorchester. He is a well-respected and well-regarded teacher and person who has had a very positive impact on not only the children he teaches but also on teachers, parents and the many people who interact with the school and children over the course of the school year. His principal, Craig Lankorst, describes him as "one of my most trusted

teachers" and "an integral part of the Fifield staff."[1]  Numerous people have expressed their concern about how his leaving Fifield School will negatively impact the students.  "It would be a tremendous loss for the children if he missed any time from teaching.  It would also impact our school's efforts to close the achievement gap and to ensure that all our students reach proficiency." (Craig Lankhorst, principal); "He is a teacher who is a positive role model to the children of our school." (Crystal Redd, Fifield teacher); "…if this school community loses Mr. Taylor, the lives of 400 or so children will be devastated and changed forever." (Teresa Nicolazzo, Fifield teacher); "…the loss of his talents at our school will negatively impact a great many children." (Audrey Horgan, Fifield teacher); "It would be a very sad day indeed, if we lost his supportive and positive influence, which children in our community so desperately need at this time." (Georgeann Chavez, Fifield teacher and parent); "It would be a shame to deprive the students of Boston from the benefit of such a wonderful music teacher." (Cynthia Tillman, retire school employee); "Mr. Taylor has a lot to offer and the urban community is in dire need of positive mentoring assistance; and he is capable of providing the education, support and enrichment of our youth." (Elsie G. Scott, friend).

In October, 2005 the Boston School Committee and the Boston Teachers Union, Local 66, entered into a Memorandum of Understanding concerning the effect of criminal convictions on a teacher's employability.  A copy of the Memorandum of Understanding is attached as EXHIBIT A.   The offense that defendant has been convicted of falls within the "Discretionary Disqualification" category, i.e. such conviction may or may not result in termination of employment.  Irrespective of this classification, however, any term of imprisonment would result in the loss of defendant's teaching job due to his physical absence from the school.

---

[1] Forty-eight letters of support submitted by teachers, students, parents and friends have been provided to the court under separate cover.

In order to determine what defendant's employment status would be as a convicted, but not incarcerated, felon, a request for an advance ruling was made to the Boston School Department.  Their response is attached as EXHIBIT B (letter from Joseph Shea, Staffing Director, Boston Public Schools, dated June 22, 2006).   Mr. Shea states: "Should his sentence not involve incarceration, he would remain an employee in good standing with the Boston School Department and, presumably, continue with his duties as a music teacher at the Fifield School."

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that mandatory guidelines based on judge-made findings violated the Sixth Amendment, but, after a severance analysis, ruled that the guidelines should be treated as "effectively advisory."

> The sentencing court's discretion remains constrained by 18 U.S.C.
> § 3553(a) (2000), which requires courts to consider a number of factors
> in imposing sentence, (citation omitted), including "the nature and
> circumstances of the offense and the history and characteristics of
> the defendant," 18 U.S.C. § 3553(a)(1), "the need for the sentence
> imposed," id. § 3553(a)(2), and "the need to avoid unwarranted
> sentence disparities among defendants with similar records who have
> been found guilty of similar conduct." Id. § 3553(a)(6).

*United States v. Smith*, 445 F.3d 1, 3 (1st Cir.2006).  While now advisory, the guidelines still remain "an important consideration."  *United States v. Jimenez-Beltre*, 440 F.3d 514 (1st Cir. 2006).  The district court should normally begin with a guideline calculation, and, after considering departures, the court should decide whether "other factors" (beyond the guidelines) warrant an ultimate sentence above or below the guideline range.  Id. at 518-519.    .

It is respectfully submitted that the serious and negative consequences to present and future students that will result from defendant's abrupt termination of his teaching duties at the Fiefield School, should he be incarcerated, and the defendant's lifetime record of honesty, integrity, and service to others, and in particular his performance as an educator, take this case

3

outside of the "heartland"[2] for which the guideline was drafted.  See 18 U.S.C. § 3553(b); *Koon v. United States*, 518 U.S. 81, 92-93 (1996); *United States v. Martin*, 221 F.3d 52, 56-57(1st Cir. 2000).

In *United States v. Olbres*, 99 F.3d 28 (1st Cir. 1996), the court held that job loss to innocent employees resulting from incarceration of a defendant may not be categorically excluded from consideration for a downward departure.  The district court had found that if defendant was jailed, his small company would become defunct and its employees would lose their jobs.  The district court stated at the end of the sentencing hearing:

> I also want the record to be clear that if the fact that your business were to fail could serve legally as a basis for departing under the Sentencing Guidelines, then I would depart, and I would depart in a manner sufficient to keep the business from failing and putting those people out of work. But as I say, I can't as I sit here find a principal [sic] basis for departing from the guidelines on those factual assumptions.

Id. at 33.  The appellate court then proceeded to apply the analysis in *Koon*, holding that potential job loss of a defendant's employees is neither a forbidden or discouraged factor under the guidelines.  And likening the situation to a defendant with family responsibilities, the court observed that "the nature and magnitude of family responsibilities (many children? with handicaps? no money? no place for children to go?) may transform the 'ordinary case' of such circumstances into a case that is not at all ordinary.  Id. at 36.

---

[2]  The Introduction to the Sentencing Guidelines explains:

The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

United States Sentencing Commission, Guidelines Manual, Ch. 1, Pt. A, intro. comment. 4(b) (Nov. 2001).

The Second Circuit likewise recognizes that there are extraordinary situations where a downward departure to avoid incarceration is appropriate to prevent harm to "innocent third parties." *United States v. Milikowsky*, 65 F.3d 4, 7 (2nd Cir. 1995). In that case, the district court found that the effect of imprisonment on defendant's employees justified a downward departure resulting in a sentence of probation with six months home confinement. The court stated that "this is a situation where I am convinced that the loss of his [defendant's] daily guidance would extraordinarily impact on persons who are employed by him." Id. at 6.

Just as the extraordinary effects on Milikowsky's employees, "to a degree[] not adequately taken into consideration by the Sentencing Commission" warranted a downward departure in that case, Id. at 8, the extraordinary effects in the instant case of defendant's incarceration on Fifield School students both present and future, warrant a downward departure. It is respectfully submitted that Talmus Taylor's situation is, in fact, extraordinary and distinguishable from other defendants. He has had an exceptional career as an elementary school music teacher. He has established a special bond with his students as is attested to by his principal, colleagues and parents. He has introduced thousands of students to the joy of music in his 18 year Boston Public School tenure and has given of himself tirelessly to the betterment of his students. His charitable and community activities are indicative of his core values, which are central to his work as a teacher. The loss of his daily involvement with students would have an extraordinary impact on these young people and the school.

Talmus Taylor is a rare individual who has positively impacted the lives of many children in his career and who has the demonstrated ability to continue doing so. In the challenging environment of an inner city elementary school, with predominantly minority students, he has truly made a difference. He has been convicted of a serious crime and should be punished. But it is respectfully submitted that this case is the atypical one that is outside the "heartland" of the

guidelines and that this defendant, and the students he cares so much about, are deserving of the

court's compassion.

Dated: July 6, 2006                                Respectfully submitted,

                                                   TALMUS R. TAYLOR

                                                   By his attorney,

                                                   /s/ Bruce T. Macdonald

                                                   Bruce T. Macdonald
                                                   678 Massachusetts Avenue
                                                   Suite 901
                                                   Cambridge, MA 02139
                                                   (617) 354-1711

MEMORANDUM OF UNDERSTANDING
BETWEEN AND AMONG
THE BOSTON SCHOOL COMMITTEE
AND
THE BOSTON TEACHERS UNION, LOCAL 66 MFT, AFT, AFL-CIO
August 19, 2005

**PREAMBLE:** The Boston School Committee and the Boston Teachers Union share an unwavering commitment to the safety of students in the Boston Public Schools. The protection of Boston's school children is of paramount importance to both parties. The parties recognize that compliance with Massachusetts General Laws, Chapter 71, Section 38R (the "CORI") statute) must encompass principles of due process, just cause, and collective bargaining with respect to members of the Boston Teachers Union. The parties recognize the application of these principles in the implementation of the CORI statute benefits students as well as teachers and other school employees by furthering the goal of maintaining a staff of school professionals who are dedicated to the education and well being of Boston's students.

In October 2003, the Boston School Committee adopted a policy regarding Criminal Offender Record Information ("CORI"), attached hereto as Exhibit A. The Boston School Committee/Boston Public Schools (herein "BPS") and the Boston Teachers Union, Local 66 MFT, AFT, AFL-CIO (herein "the Union") have negotiated the implementation of this policy and agree as follows:

1.     The BPS shall notify the Union, in writing, prior to terminating an employee represented by the Union for refusing to execute a CORI request/authorization form within the required ten-day period. The BPS shall stay the ten-day period, or any part thereof, if an employee is on an approved leave such as sick leave, family medical leave, or bereavement leave. Prior to initiating termination proceedings of an employee for refusing to execute the CORI request/authorization form, the BPS will wait at least 5 days after providing the BTU with notice that the employee has failed to provide the BPS with a completed and signed CORI request/authorization form and will provide the employee with a hearing. If the employee fails to complete and sign the required form on or before the hearing and is subsequently terminated because he/she refuses to authorize the BPS to have access to his/her CORI report, such termination may be subject to the grievance and arbitration procedures in the parties' collective bargaining agreement. Nothing in this paragraph 1 shall diminish any rights which an employee may have to seek arbitration of the termination decision pursuant to Massachusetts General Laws chapter 71.

2.     Any discipline based on an employee's CORI report must be consistent with the parties' collective bargaining agreement and may be grieved in accordance with the grievance procedure in the parties' collective bargaining agreement.

3.   If the employee disagrees with the accuracy of his or her CORI report and is taking steps to correct the purported error(s) in the CORI report and if the contents of an employee's CORI report would or may disqualify the employee from employment with the Boston Public Schools, the employee, who may have Union representation, may discuss with the Director of Human Resources the possibility of temporarily reassigning the employee to a temporary assignment where the employee shall not have direct unmonitored contact with children.   At the discretion of the Director of Human Resources, an employee may be temporarily reassigned in the absence of such a discussion.   The employee shall be required to demonstrate periodically to the BPS that he/she is taking appropriate steps to have the purported error(s) corrected in his/her CORI report and is doing so without undue delay.   If the employee believes that the conviction on his/her CORI report is incorrect, the employee shall provide the BPS with documentation, if available, from the court showing the disposition of the charges.   As a condition of such temporary reassignment, the employee agrees to complete and sign CORI request/authorization forms as directed by the BPS.   Whether or not the employee is temporarily reassigned, the employee shall continue to receive his/her regular rate of pay until the employee has been terminated or until the error has been corrected.   However, even if the temporary assignment is provided, the employee shall have no guarantee of continued employment.

4.   (a)   Criminal offenses that appear on an employee's CORI report shall be defined by statute(s), case law, and/or legal precedent in Massachusetts until such time as CORI records contain convictions from other jurisdictions.[1]

(b)   It is understood that employees would not be considered ineligible for service under paragraph 4 (a) or 4(b) of the BPS CORI policy if the "unnatural act" were for consensual conduct between consenting adults in non-public places.

(c)   The parties acknowledge that the Union does not agree that every conviction for a crime under paragraph 4(a) or 4(b) of the BPS CORI policy would render an employee ineligible for continued employment.

(d)   If after reviewing an employee's CORI report under the BPS CORI policy in Exhibit A, the BPS determines that the conviction(s) on the employee's CORI report do not render the employee ineligible for continued employment, the BPS will not, as a result of a subsequent review of the employee's CORI report under the BPS CORI policy, determine that this same conviction(s) would render the employee ineligible for continued employment provided that the employee has no additional or subsequent convictions of the same nature and the nature of the employee's position has not changed.

5.   (a)   The Director of Transportation shall not sit on the panel, described in Exhibit A at Paragraph 4(b) of the BPS CORI policy.   (The Panel shall consist of at least three members/designees.)   Principals and Headmasters assigned to schools shall not be members of the Panel, shall not serve as designees of Panel members, and shall not have

---

[1]   If an employee can demonstrate that his/her conviction(s) is/are for activity which is no longer deemed a crime, the employee would not be subject to 4(a) or 4(b) of the CORI policy for such conviction(s).

2

access to CORI records. BPS will not authorize more than twenty-nine (29) individuals to have access to CORI records at any one time.

(b)    The Panel provided for in paragraph 4 (b) of the BPS CORI policy shall meet within ten working days during the school year and 15 week days during the summer months from notice that there is an employee with convictions for the Panel to review under Paragraph 4 (b) of the BPS CORI policy. The Panel will make one of two recommendations: (1) that the employee's conviction(s) should not effect the employee's employment and have the CORI record filed without any further action, or (2) that the matter should be referred for a hearing and shall forward the Panel's recommendation to the Labor Relations Director to schedule a hearing in accordance with applicable school department policies and the collective bargaining agreement. If the Panel recommends that the matter be referred to the Labor Relations Director to schedule a hearing, a notice that a hearing will be scheduled will be mailed to the employee within 15 working days of the Panel's recommendation. The employee will continue to receive his/her regular rate of pay until such time as he/she is suspended and/or terminated. For the first year of this Agreement, the parties agree that the BPS will endeavor to comply with the time periods specified in this paragraph when practicable.

6.    The Union President may petition the Superintendent to consider hiring an individual who was a former BPS employee with Professional Teacher Status ("PTS") and who had been terminated for a conviction under the BPS CORI policy and whose conviction was subsequently overturned on appeal within a five-year period. The Union President and the Superintendent shall meet to discuss such petition. If the Superintendent does not agree that the individual should be hired by the Boston Public Schools, and the Union President continues to believe that such an individual should be hired, then the parties shall agree on a mediator to assist the parties in coming to an agreement, if possible. The expenses of the mediator shall be shared equally by the parties. In the event that before or after mediation, the Superintendent agrees to rehire such an individual, such an individual must be otherwise qualified (certified/certifiable/licensed) and eligible for employment and would be assigned at the discretion of the Superintendent and placed at the step consistent with where such individual was at the time of his/her termination, subject to the collective bargaining agreement, and such individual's seniority and PTS status will be restored. (Under no circumstances shall such an individual make any claim for pay or benefits for the period during which she/he was not employed.)

7.    In obtaining, reviewing, and storing CORI records, the Boston Public Schools will adhere to protocols established by the Human Resources Department which shall require: a segregated, private, and secure room for obtaining, reviewing, and storing CORI records. A copy of the current protocols is attached as Exhibit B.

Signed this ___ day of _____, 2005.

BOSTON SCHOOL COMMITTEE        BOSTON TEACHERS UNION,
LOCAL 66, MFT, AFT, AFL-CIO

By: Michael Contompasis            By: Richard F. Stutman
Title: Chief Operating Officer      Title: President
Dated: ___10 | 31 | 05___, 2005      Dated: ___10 | 28___, 2005

DWLIB 187041v1
8404/11

Exhibit A

# City of Boston
## In School Committee

October 22, 2003

### CORI Check Policy

ORDERED, that the School Committee hereby approves the Criminal Offender Record Information (CORI) Policy, as it has been proposed by the Superintendent of Schools on October 17, 2003 and as is attached to this motion.

The order was approved by unanimous consent.

Attest:

*Laurie Ciardi*

Laurie A. Ciardi
Executive Secretary

## Boston Public Schools
## Criminal Offender Record Information (CORI) Policy

So as to protect school children, the Boston School Committee is committed to ensuring that all current and prospective Boston Public Schools employees, transportation providers, and volunteers who may have direct, unmonitored, and substantial contact with children, are appropriate for serving in their positions. The following is therefore the policy of the Boston Public Schools with regard to Criminal Offender Record Information (CORI).

1. Boston Public Schools will request and obtain on all prospective and current:

    a. employees and candidates for employment, subject to any collective bargaining obligations;

    b. individuals who regularly provide school transportation to eligible Boston Public School students; and

    c. school volunteers who have direct, unmonitored, and substantial contact with students

    criminal offender record information from the criminal history systems board and evaluate such information to determine if an individual poses an unacceptable risk to the children whom the Boston Public Schools' mission is to serve. Boston Public Schools retains the right to require of its contractors that they obtain and evaluate criminal offender record information on all prospective and current subcontractors or laborers, who may have direct, unmonitored and substantial contact with students, when commissioned by Boston Public Schools to perform work on school grounds.

2. All such individuals included in this policy must execute a CORI Request Form within ten days, following a request from the Human Resources Department. An individual may appeal the determination of his or her position, as one requiring a CORI check, in writing to the Human Resources Department.

3. CORI information will be maintained confidentially, on a need-to-know basis only, in the Human Resources Department, which will designate one or two individuals who will routinely review CORI information. CORI information will remain segregated from all personnel files or other personnel information.

4. Based upon a review of the CORI record, the following process and standards will apply to determining fitness for service with the Boston Public Schools:

   a. convictions for: rape; performing an unnatural act; indecent assault and battery; the crime of attempting any of the above offenses; the sale, use, manufacture, distribution, or possession with intent to distribute any substance that is unlawful under G.L. c. 94C, §31;[1] or a felony constituting a crime of violence within five (5) years of the CORI request shall render said individual ineligible for service with Boston Public Schools; and

   b. convictions for: any other felony than those previously enumerated; any misdemeanor with an incarceration date or conviction date within five (5) years of the CORI request; any multiple (i.e., more than one) misdemeanor convictions within ten (10) years for drunkenness, simple assault, affray or disturbing the peace

   may be reviewed by a panel consisting of two or more of the following individuals or their designees: Chief Operating Officer; Director of Human Resources; Director of Transportation; Director of Labor Relations; Director of Equity; and the Director of Operations who may or may not determine such individual ineligible for service with Boston Public Schools based upon a set of criteria. In making this determination, the panel will specifically and particularly consider and evaluate whether the nature of the conviction poses any threat or concern for the safety and well-being of Boston Public Schools students.

5. An individual may dispute information contained in their CORI report in writing to the Director of Human Resources, and review will be stayed for a brief time while the applicant or employee/driver/volunteer contacts the criminal history systems board to correct any alleged error.

6. CORI information may be used only to further the protection of children and for no other purpose. Improper use of CORI information is both a civil and a criminal offense, and would subject an employee to discipline.

IVPMKelley\CORI\SC CORI Policy

---

[1] Simple possession of marijuana, if the conviction is five (5) years prior to the CORI request, shall not constitute a violation of this section.

2

Boston Public Schools

Procedure for Review of Criminal Offender Record Information (CORI)

for prospective and current employees, volunteers, transportation providers, and others who have direct, unmonitored and substantial contact with children

## I.   Purpose

To establish a uniform policy in the Boston Public Schools to request, obtain, and evaluate criminal offender record information (herein after, "CORI") from the Criminal History Systems Board obtained, pursuant to G. L. c.71, §38R; G. L. c.6, §§167-168, for all prospective and current Boston Public Schools employees, school transportation providers, and volunteers who have direct, unmonitored, and substantial contact with children.

## II.   Policy

Pursuant to the mandates of G. L. c.71, §38R, the Boston Public Schools is committed to ensuring that employees, transportation providers, and volunteers who have direct, unmonitored, and substantial contact with Boston Public Schools students are appropriate for serving in their positions while concomitantly recognizing the rehabilitative nature of past, unrepeated interactions with the criminal justice system. To this end, a CORI check shall be consented to as a condition of future or continued employment or volunteering with Boston Public Schools and, furthermore, it is the policy of the Boston Public Schools that convictions for certain crimes pose an unacceptable risk to the children whom the Boston Public Schools' mission is to serve.

## III.   Scope

This policy applies to:

1. all current employees and prospective candidates for employment with the Boston Public Schools;

2. all individuals who regularly provide school transportation to Boston Public Schools eligible students, whether employed by Boston Public Schools or not;

3. all school volunteers who have direct, unmonitored, and substantial contact with students.

For the purpose of this section, many case-by-case determinations will need to be made: a chaperone at a high school dance would not fall within this category, but a chaperone of a multiple, overnight, foreign field trip would, since such a chaperone would be in an unsupervised setting.

## IV.   Procedure for Obtaining CORI Information

The Department of Human Resources will first notify all current and prospective employees, volunteers, and transportation providers, where appropriate, that the school system will be reviewing CORI information provided by the Criminal History Systems Board and that, once reviewed, appropriate action will be taken that may affect current or future employment or volunteerism with Boston Public Schools. The notice will state that all putative employees must execute a Request Form to the Criminal History Systems Board and allow for the Boston Public Schools' Human Resources Department to review CORI information available from the Criminal History Systems Board. Likewise, all current Boston Public Schools employees must similarly execute a CORI Request Form to the Criminal History Systems Board for review of CORI information, by authorized Boston Public Schools personnel.

Such notice will also explain to the affected individual the standard under which they were included in the CORI pool. For employees the standard is having "direct and unmonitored contact with children." For volunteers, the standard is "direct, unmonitored and substantial contact with children." In the event that the individual against whom such notice has or will be sought disagrees that their position does entail either of the two above-referenced standards, said individual may file a written appeal with the Human Resources Department. The initial burden to show lack of contact with children is upon the employee or volunteer. Such person shall submit a letter in support of their assertion that their position does not entail such contact with children. Any appropriate documentation should be presented upon submission of such letter.

The Hearing Officer, in passing upon whether the position in question requires a mandatory CORI check, should consider the following in determining whether a particular position entails "direct and unmonitored contact with children:"

- Direct and unmonitored contact with children means such contact on a regular not irregular basis, with Boston Public Schools children when no other CORI cleared Boston Public Schools employee or agent is present.
- Substantial contact is contact on a frequent, not on an infrequent basis.
- In all other circumstances, where an employee or volunteer is never in the presence of a child without also being in the presence of a CORI-cleared classroom teacher, no CORI check is mandatory.

The Human Resources Department will disseminate such Request Forms, which must be returned by the employee or volunteer within 10 days. Failure fully to execute a Request Form for a putative employee will be grounds to discontinue the hiring process immediately. Should a current employee refuse to sign a Request Form, such matters

will be dealt with by Boston Public Schools Office of Labor Relations, as a matter of discipline, up to and including termination of employment.

Each such request for CORI information shall be completed every (3) three years, as a condition of continued employment. Specific questions about the necessity of running a CORI check on a school volunteer or group of volunteers should be addressed to the Office of Legal Advisor at 617-635-9320.

V. Requesting, Reviewing, and Maintaining CORI

It is the Human Resources Department's desire that only one or two individual Human Resources employees have responsibility for obtaining and receiving CORI record information. The Human Resources designee will receive and maintain all properly obtained CORI information. CORI information will remain segregated from all personnel files or other personnel information. Such designee should make a recommendation to the Director of Human Resources for appropriate action, including identifying candidates for such mandatory or discretionary disqualification as is discussed in section VI, infra. Additionally, members of the CORI Review Panel, identified in section VI, infra shall have access to selected CORI information. The Superintendent, Chief Operating Officer, Director of Human Resources, Chief of Staff, and Legal Advisor shall also have access to CORI record information, as is necessary to perform their job functions.

VI. Review of CORI Information[1]

Mandatory Disqualification:

An individual will not be eligible for employment as a Boston Public Schools employee or volunteer if he or she:

1. has been convicted of committing the crime of rape, performing an unnatural act, indecent assault or battery, or the crime of attempting any of the above offenses;

2. has been convicted of committing the crime of the use, sale, manufacture, distribution, or possession with intent to distribute any of the controlled substances that are unlawful under the provisions of G.L. c. 94C, §31 (except for simple possession of marijuana if the date of conviction is five or more years prior to the request for criminal record information); or

3. has been convicted of committing a felony constituting a crime of violence, where the date of the conviction is within five years immediately preceding the request for criminal record information.

Discretionary Disqualification:

---

[1] This standard is largely drawn from the Boston Public Schools policy, Effect of Criminal Record on Employment. Boston School Committee adopted June 25, 1985.

An individual may be deemed ineligible for employment as a Boston Public Schools employee, volunteer or subcontractor/laborer by a majority of a panel consisting of two or more of the following: the Chief Operating Officer, the Director of Human Resources, the Director of School Transportation, Director of Labor Relations, the Director of Equity, the Director of Operations, or their designees, on a case-by-case basis, if he or she:

4.    has been convicted of committing a felony other than those described in paragraphs (1), (2), or (3) above;

5.    has been convicted of committing a misdemeanor (other than a first conviction for the offenses listed in paragraph 6 below), where the date of the conviction or the completion of any period of incarceration, whichever date is later, is within the five years immediately preceding the request for criminal record information (taking into account, as well, all misdemeanor convictions, other than first convictions for the offenses listed in paragraph (6), within the 10 years immediately preceding the request for such information); or

6.    has been convicted more than once of committing any of the following misdemeanors, where the date of at least one of the convictions occurred within the 10 years immediately preceding the request for criminal record information: drunkenness, simple assault, affray, or disturbance of the peace.

In reviewing the applications of individuals who have criminal records, but who are not excluded under the mandatory disqualification portion of this policy, the panel will give due weight to the following: the age of the convictions; the age of the applicant when convicted; the nexus between the conviction and the individual's fitness to serve as a school employee or volunteer; the type of offense; the age of the offense; whether there was a conviction; the sentence; whether probation was successfully completed; the date of the offense; whether there were subsequent arrests. Upon reviewing this information, the Screening Panel shall vote to allow continued employment or dismissal. All such votes shall be recorded and shall be by a majority of members then present. In addition to the members of this reviewing body, the only other persons authorized to read CORI information are indicated in the previous section.

VII.    Correcting CORI Record Information Errors

If an applicant or current employee disputes the information contained in the CORI, he or she should so inform the Director of Human Resources in writing. Such individual should then coordinate with the Criminal History Systems Board for review and updating. The Boston Public Schools' process in interpreting the information shall be stayed for a brief time. It is the candidate's responsibility to contact the Criminal History Systems Board to make and obtain any modification to the CORI information. The candidate may have no contact whatsoever with any Boston Public Schools student

during the pendency of the process of disputing and potentially correcting the information contained in the CORI.

## VIII.  Unlawful Release of CORI Information

CORI information obtained under this policy must be used to "further the protection of children," and for no other purpose.

It is a crime punishable by a fine of $5,000 and imprisonment of up to a year willfully to request, obtain, or seek to obtain CORI under false pretenses, or willfully to communicate or seek to communicate CORI information to any agency or person not authorized to receive CORI information.  Additional civil penalties may apply.

CORI record information is not subject to the public records laws and may not be disseminated to unauthorized persons.

J\PMKelley\CORI\BostonPublicSchoolsofCriminalRecordInformationforProspective&ActualEmployees

5

**EXHIBIT B**

## PROTOCOL REGARDING CORI INFORMATION

The following is a recommended protocol to be followed when BPS obtains CORI information on employees from the Criminal History Systems Board ("CHSB").

1.  **Authorized Access to CORI**: The accessing of any employee's CORI information will be done only by BPS personnel who are authorized by the CHSB to access such CORI information.

2.  **Obtaining CORI Information**: An employee's CORI information will be accessed in accordance with procedures of the CHSB. In 2005, in accordance with CHSB procedures, an employee's CORI information will be accessed by authorized BPS personnel from either a computer that is located in a segregated area or from a computer that is equipped with a privacy screen.

    (a) All BPS personnel authorized by the CHSB to access an employee's CORI information will have their own individual passwords that must be used when accessing CORI information from BPS computer(s).

    (b) When authorized BPS personnel access an employee's CORI information, that information will be printed to an adjacent printer. The employee's CORI information will then be deleted from the desktop. No CORI information will be saved to the computer's hard drive.

    (c) If a computer used to access CORI information is ever moved to another location or "swapped out," the computer will be cleaned.

3.  **Review and Treatment of CORI Information**: When an employee's CORI information is accessed by authorized BPS personnel, it will be treated in the following manner:

    (a) If the employee has no criminal record, the CORI information will be filed in a locked cabinet in a locked room. Access to the cabinet is limited to BPS personnel authorized to have access to CORI information in the HR department.

    (b) If the employee has a criminal record, the Staffing Director/ Joe Shea will determine, in accordance with BPS CORI policy, if the employee's record, renders the employee ineligible for service with the BPS .

    (c) If the Staffing Director/Joe Shea determines, in accordance with sections 4 a and b of the BPS CORI policy, that the employee is not rendered ineligible for service with the BPS, the employee's CORI information will be filed in a locked

cabinet in a locked room. Access to the cabinet is limited to BPS personnel authorized to have access to CORI information in the HR department.

(d) If the Staffing Director/Joe Shea determines, in accordance with Section 4.a of the BPS CORI policy, that the employee's record renders the employee ineligible for service with the BPS, the Department of Labor Relations ("DOLR") will be contacted and action will be taken in accordance with applicable School Department Policies and any applicable collective bargaining agreement.

(e) If the Staffing Director/Joe Shea determines, in accordance with Section 4.b of the BPS CORI policy, that the employee's record may render the employee ineligible for service with the BPS, the review panel will review the employee's criminal record in accordance with applicable School Department Policy.

>(i) If the review panel determines that the employee is not ineligible for continued service with the BPS, the employee's CORI will be filed in a locked cabinet in a locked room. Access to the cabinet is limited to BPS personnel authorized to have access to CORI information in the HR department.

>(ii) If the review panel determines that the employee is ineligible for service with the BPS, the Director of Labor Relations will be contacted and action will be taken in accordance with applicable School Department Policies and any applicable collective bargaining agreement.

(f) A Transportation designee will be on the review panel only in matters involving a transportation employee.

(g) All CORI records will be filed alphabetically in a locked cabinet in a locked room. Access to the cabinet is limited to BPS personnel authorized to have access to CORI information in the HR department.

**4. Periodic Review of CORI:** In accordance with M.G.L. c. 71§38R, employees' CORI information will be accessed at least once every three (3) years. When an employee's subsequent CORI information is accessed, the employee's prior CORI information will be shredded.

DWLIB 177236v1
8404/11

# Boston Public Schools
## Office of Human Resources

June 22, 2006

Bruce T. Macdonald, Esq.
678 Massachusetts Avenue, Suite 901
Cambridge, MA 02139

Re:    **Talmus Taylor**

Dear Attorney Macdonald:

In response to your inquiry regarding the employment status of your client, Talmus Taylor, a teacher at the Emily Fifield School in Dorchester, I provide the following:

The Boston School Department has been advised that Talmus Taylor, a twenty year employee, was convicted on March 29, 2006 in the U.S. District Court in Boston of violating the Internal Revenue Code, 26 U.S.C., § 7206(2). I verified this information by performing a Criminal Offender Record Information check relative to Mr. Taylor's background.

According to the Boston Public Schools CORI Policy, I found this conviction to fall within the discretionary category and convened a panel for review. The procedures that have been established by the School Department regarding employees with criminal records are designed to insure the protection of our students. Without minimizing the seriousness of Mr. Taylor's offense, the panel decided that he would continue to be eligible for employment in the Boston Public Schools should he not be incarcerated.

I understand that Mr. Taylor is scheduled to be sentenced on July 12, 2006. Should his sentence not involve incarceration, he would remain an employee in good standing with the Boston School Department and, presumably, continue with his duties as a music teacher at the Fifield School.

I would further like to point out that in his eighteen years of employment in the Boston Public Schools, Mr. Taylor has never been disciplined and has received "meets or exceeds expectations" ratings (or the equivalent) on all of his many performance evaluations.

I hope the above is helpful to you.

Sincerely

Joseph Shea
Staffing Director,
Boston Public Schools

26 Court Street
Boston, MA 02108

Voice: (617) 635-9600
Fax: (617) 635-9672

www.boston.k12.ma.us



FOCUS
On Children
Boston Public Schools

