UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                  )
UNITED STATES OF AMERICA     )
                                                  )
         v.                         )      CRIMINAL NO. 05-10067-PBS
                                                  )
TALMUS R. TAYLOR                 )
                                                  )
              Defendant          )
_____)

## GOVERNMENT'S POST-REMAND SENTENCING MEMORANDUM

I.     Introduction

This case comes before the Court for re-sentencing after remand by the Court of Appeals for the First Circuit. See United States v. Taylor, 532 F.3d 68 (1st Cir. 2008) ("Taylor II"); United States v. Taylor, 499 F.3d 94 (1st Cir. 2007) ("Taylor I"). In Taylor I, the First Circuit found that this Court abused its discretion when, in the face of a Guidelines sentencing range ("GSR") of 30 to 37 months in prison, it sentenced the defendant to five years' probation (including one year in a halfway house) after conviction on 16 counts of aiding in the preparation of false tax returns resulting in an aggregate tax loss of $129,879. 499 F.3d 96-101. The First Circuit noted that Taylor compounded his crime by "counsel[ing] two witnesses to falsify evidence and lie to the IRS." Id. at 96. The First Circuit concluded that, given the specific facts of this case, a probationary sentence was not reasonable, i.e. was not a "plausible result." Id. at 102. Having concluded that this Court had given short shrift to certain of the factors prescribed in 18 U.S.C. § 3553(a), the court of appeals instructed that this Court "resentence Taylor by taking proper account of all of the [§ 3553(a) factors ] and providing a reasoned explanation for its result." Id. at 104.

In Taylor II, the First Circuit stated that the "the fairest course of action [in light of Gall

v. United States, --- U.S. ----, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)] was to provide the district court the opportunity to reconsider its sentence in view of the Supreme Court's elucidation of sentencing procedures, as well as some of the concerns we had expressed in [Taylor I]." Taylor II, 532 F.3d at 69 (citation omitted).

The questions before this Court at resentencing are therefore (1) whether and to what extent Gall affects the force of the First Circuit's conclusion in Taylor I that a probationary sentence in this case is not reasonable; and (2) whether a sentence lacking a component of incarceration is reasonable in light of all the §3553 factors, especially those about which the First Circuit has expressed particular concern in this case.  With regard to the first question, the First Circuit has explained, that Gall emphasized "both the amount of play that exists in the joints and the degree of respectful deference that is owed to the sentencing court's exercise of its informed discretion."  United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).  However, the First Circuit, in Taylor I, applied the standard of review dictated by Gall – the deferential abuse-of-discretion standard.  See Gall, 128 S.Ct. at 591.  There thus remains force in the First Circuit's conclusion in Taylor I that a probationary sentence is unreasonable – even in light of the condition that Taylor reside in a halfway house for twelve months of his probationary period.  With regard to the second question, it is the view of the government, especially in light of the First Circuit's analysis in Taylor I, that a reasonable sentence requires some period of incarceration.

II.     The Effect of Gall On the First Circuit's Decision in Taylor I

After granting petition for writ of certoriari in Taylor I, the Supreme Court vacated and remanded the First Circuit's decision in light of Gall.  Taylor v. United States, 128 S.Ct. 878 (2008).  The First Circuit has recently considered the significance of the Gall decision with

respect to appellate review of criminal sentencing.  See, e.g., Martin, 520 F.3d at 92.

> A corollary of the broad discretion that *Gall* reposes in the district courts is the respectful deference that appellate courts must accord district courts' fact-intensive sentencing decisions.  Thus, the court of appeals must review the sentence actually imposed "under a deferential abuse-of-discretion standard." *Gall*, 128 S.Ct. at 591.  In that endeavor, it must "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the §3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." *Id.* at 597.
>
> Once the appellate court has satisfied itself that the sentence is procedurally sound, it must proceed, under the same abuse of discretion rubric, to review the substantive reasonableness of the sentence, taking into account the totality of the circumstances.

520 F.3d at 92 (citation to Gall omitted).

The First Circuit's post-Booker jurisprudence, as reflected in Taylor I and elsewhere, is compatible with Gall.  As the First Circuit noted in Martin,

> Post-*Booker,* we made clear that the linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result. *Jiménez-Beltre,* 440 F.3d at 519.  *Gall* has not dissipated the force of that conclusion; what it has done, however, is to emphasize both the amount of play that exists in the joints and the degree of respectful deference that is owed to the sentencing court's exercise of its informed discretion.

Martin, 520 F.3d at 96.               .

In the government's view, both the analysis and result in the Taylor I decision retain their validity after Gall.  In Taylor I, the First Circuit concluded – fully consonant with the Gall methodology – that this Court "properly calculated the advisory Sentencing Guidelines range

and correctly interpreted the relevant Sentencing Commission policy statements." 499 F.3d at 100.  The court further noted that, "because there is no dispute that the court gave proper weight to the Guidelines, the only remaining question at issue in this appeal is whether the court's sentence was 'reasonable." Id.  On this point, the court of appeals expressly recognized this Court's broad latitude in fashioning an appropriate sentence:  "we do not wish to unduly constrain the district court's sentencing discretion on remand." Id. at 102.  Nevertheless, given the protracted and mercenary character of Taylor's criminal activity, given Taylor's exacerbation of his crimes by obstructing justice, given Taylor's failure to accept responsibility for his offenses, and given his lack of genuine remorse,[1] the First Circuit concluded that a probationary sentence was not a "plausible result." Id. at 102.

III.    A Probationary Sentence Continues To Be Unreasonable Post-Gall.

There is nothing in either the reasoning or result of the decision in Taylor I that contradicts the Supreme Court's teachings in Gall.  As noted above, this Court has never endorsed the now-repudiated standard employed by the Eighth Circuit in Gall, whereby only an extraordinary justification could warrant a large deviation from the GSR.  The question, then, is whether Gall's emphasis on "play . . . in the joints" represents such a fundamental re-casting of the abuse-of-discretion standard as to thoroughly undercut the First Circuit's analysis in Taylor I.  The government submits that the answer to this question is no.  If the Supreme Court intended in Gall to imbue the term "abuse-of-discretion" with a radically new meaning, it certainly did not say so.  On the contrary, Gall makes clear that sentencing decisions continue to be subject to

---

[1]Rather than expressing remorse for his crimes or for his suborning and commission of perjury, Taylor, at sentencing, merely stated that he was "sorry that [he had] actually put [his] job into jeopardy as a music teacher." Id. at 97.

"meaningful" review. 128 S.Ct. at 596.

To be clear, Gall emphasized that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." 128 S.Ct. at 598 (citation and internal quotation marks omitted).[2] It is therefore reasonable, for example, to consider whether probationary sentence fails to serve the needs of general deterrence when <u>Gall</u> points out that non-custodial sentences may nonetheless be considered meaningful restraints on liberty. There is, however, little if any similarity in the circumstances of Taylor and the defendant in <u>Gall</u>. <u>Gall</u> involved a probationary sentence for one individual – among eight co-defendants – who had distinguished himself by voluntarily withdrawing from youthful criminal activity before he was detected and who had "self-rehabilitated." 128 S.Ct. at 592. Here, by contrast, Taylor never accepted responsibility for his crimes and obstructed justice during both investigation and trial. Nothing in <u>Gall</u> heralds a wholesale retreat from the general rule – embodied in the recommendations set forth in the Sentencing Guidelines – that serious offenses warrant prison sentences. As the Court in <u>Gall</u> acknowledged, "We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms." 128 S. Ct. at 595.

---

[2] There is no dispute, for example, that this Court's determination that USSG §5H1.11 weighed in favor of a lower sentence. As the court stated in <u>Taylor I</u>, "Although another judge might have decided otherwise, we conclude that the district court's determination was a reasonable interpretation of the facts before it." 499 F.3d at 100. The court also noted that while this Court could properly consider the effect of a defendant's sentence on third parties – such as Taylor's pupils – it would also be necessary to consider the degree to which such effects may be the norm in white collar criminal cases. 499 F.3d at 103.

The record in Gall reflects that there were co-defendants who were far more culpable than Gall and that these individuals received stiff prison terms. Indeed, the Court in Gall noted that "[t]he Government's legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law," and suggested that this concern was "at least to some extent offset by the fact that seven of the eight defendants in this case have been sentenced to significant prison terms." 128 S. Ct. at 599. Here, by contrast, Taylor was plainly the most culpable individual involved in the tax fraud activity he orchestrated. Moreover, Taylor accepted no responsibility for his crimes and exacerbated them by obstructing justice.

Likewise, after Gall, this Court may properly consider such factors as the negative impact on Taylor's students that would arise from Taylor's absence from school. Taylor I acknowledged as much, but also pointed out that this Court should consider the degree to which incarceration of white-collar defendants commonly carries negative effects on innocent third-parties, such as employees who may lose their jobs. 499 F.3d at 103.

That this Court may properly consider the impact of an incarcerative sentence on Taylor's students does not, however, mean that such considerations may simply displace the core considerations for sentencing under 18 U.S.C. §3553. After Gall, as before, substantive consideration of sentencing outcomes is that they must yield a result that is "plausible," in light of the nature and circumstances of the defendant's crime, the need to reflect its seriousness and the need to provide "'adequate deterrence to criminal conduct.'" 499 F.3d at 102-03 (quoting 18 U.S.C. §3553(a)(2)(B)). In the First Circuit's view, as expressed in Taylor I, this Court gave "incommensurate weight to the fact that Taylor's absence from school would negatively affect his students." Id.

Considering the discussion in Taylor I of the nature and circumstances of the crimes in this case, as well as the need to adequately deter crimes of the kind at issue here, one would be hard pressed to find that the First Circuit was incorrect in its conclusion that a probationary sentence for Taylor was not a "plausible result." 499 F.3d at 102. In simplest terms, granting Taylor a probationary sentence all but eliminates the prospect of meaningful deterrence for individuals who engage in tax fraud crimes similar to Taylor's. A probationary sentence for Taylor leaves no room for a lesser, but still meaningful, sentence for a defendant whose criminality and good works resemble Taylor's, but who – unlike Taylor – accepts responsibility for his offenses. Indeed, a probationary sentence does not even leave room for a lesser but meaningful sentence for a similarly situated defendant who does not accept responsibility but – again unlike Taylor – stops short of suborning and committing perjury.

With regard to this Court's reliance in determining the sentence in this case on Taylor's contribution to the community, the court of appeals in Taylor I noted that critical considerations under 18 U.S.C. §3553(a) militated strongly against a probationary sentence. Specifically, the Court noted that Taylor's criminal activity was protracted – taking place over a four-year period – and serious. 499 F.3d at 102. Id.[3] This was not simply tax evasion by an individual hoping to avoid his own liabilities; rather, Taylor was in the business of aiding and abetting tax fraud as means of supplementing his income as a teacher. 499 F.3d at 102. Moreover, Taylor actively

---

[3] The First Circuit referred to the counts of conviction in describing "[t]he offense that Taylor committed no less than sixteen times over a four-year period . . .." 499 F.3d at 102. In fact, the evidence at trial included at least five additional clients, not identified in specific counts of the indictment, whom Taylor misled into filing fraudulent returns. Trial Transcript. March 23, 2006: 91-120. The losses attributable to these additional fraudulent returns were included in the undisputed tax loss figure of approximately $130,000. PSR ¶¶ 23-24.

misled his own clients and not just the IRS.  Id.  Taylor compounded his underlying criminal activity by obstructing justice during the course of the investigation and the trial "by asking his clients to misinform the IRS and provide inaccurate testimony."  Id.  Taylor himself testified at trial, "denying involvement in any fraudulent scheme," 499 F.3d at 96, providing "no indication whatsoever that Taylor has accepted responsibility for his actions."  499 F.3d at 102.

In the face of these circumstances, the government agrees with the First Circuit's conclusion that Taylor's probationary sentence did not adequately consider the "nature and circumstances" of Taylor's crime or "the need to reflect its seriousness."  499 F.3d at 103.  Of particular significance is the court's emphasis on the important policy considerations associated with deterrence of white-collar crime:  "We do not see why Taylor is an aberration from the overall conclusion that the threat of jail time deters white-collar crime, and thus we are not convinced that a non-jail sentence for Taylor would adequately serve the goal of general deterrence."  499 F.3d at 103-104.  See also S. Rep. No. 98-225, at 91-92 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3274-75.

Finally, as pointed out by the First Circuit, Taylor's probationary sentence failed to take into account the important goal in the sentencing process of minimizing "'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"  499 F.3d at 104 (quoting 18 U.S.C. §3553(a)(6)).  In particular, the court pointed to the goal of "'minimization of discrepancies between white- and blue-collar offenses.'"  Id. (citations omitted).

Thus, despite Gall's emphasis on "play . . . in the joints" in determining a reasonable sentence, a sentence of probation remains unreasonable and fully warrants meaningful

reconsideration by this Court, especially in light of the First Circuit's directive in Taylor I that the Court revisit the sentence with an eye to addressing "the nature and circumstances of Taylor's crime, 18 U.S.C. §3553(a)(1), and the need to reflect its seriousness, 18 U.S.C. §3553(a)(2)(A)." Id. at 103.  Such meaningful reconsideration, the government submits, requires the conclusion reached by the First Circuit:  that on the record before this Court, a non-jail sentence is unreasonable.

          Respectfully submitted,

          MICHAEL J. SULLIVAN
          United States Attorney

By:    /s/ *John A. Capin*
          _____
          JOHN A. CAPIN
          Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

     I, John A. Capin, hereby certify that I have, on September 11, 2008, caused a true and accurate copy of the foregoing to be served upon all counsel of record by filing the document with the Court electronically.

Dated:  September 22, 2008

          /s/ *John A. Capin*
          _____
          JOHN A. CAPIN
          Assistant U.S. Attorney